**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: DYNAMIC RANDOM ACCESS
MEMORY (DRAM) ANTITRUST
LITIGATION.

---

CENTERPRISE INTERNATIONAL, LTD,
        *Plaintiff-Appellant,*

        v.

MICRON TECHNOLOGY, INC.; MICRON
SEMICONDUCTOR PRODUCTS INC.;
CRUCIAL TECHNOLOGY, INC.;
SAMSUNG ELECTRONICS CO. LTD.;
SAMSUNG SEMICONDUCTOR, INC.;
MOSEL-VITELIC, INC.; MOSEL-
VITELIC CORPORATION (USA);
INFINEON TECHNOLOGIES, AG;
INFINEON TECHNOLOGIES NORTH
AMERICA CORP.; HYNIX
SEMICONDUCTOR AMERICA, INC.;
HYNIX SEMICONDUCTOR, INC.;
ELPIDA MEMORY, INC.; ELPIDA
MEMORY, (USA) INC.; NEC
ELECTRONICS AMERICA, INC.; NANYA
TECHNOLOGY CORP.; NANYA
TECHNOLOGY CORP. USA; WINBOND
ELECTRONICS CORP.; WINBOND
ELECTRONICS CORP. AMERICA,
        *Defendants-Appellees.*

No. 06-15636

D.C. Nos.
CV-02-01486-PJH
CV-05-03026-PJH

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

14341

14342 In re Dynamic Random Access Memory

Argued and Submitted
March 13, 2008—San Francisco, California

Filed August 14, 2008
Amended October 9, 2008

Before: John T. Noonan, Jr., M. Margaret McKeown and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Fisher;
Concurrence by Judge Noonan

| I<small>N RE</small> D<small>YNAMIC</small> R<small>ANDOM</small> A<small>CCESS</small> M<small>EMORY</small> | 14345 |
|---|---|

## COUNSEL

Henry H. Rossbacher, The Rossbacher Firm; Natalie Finkelman Bennett and James C. Shah (argued), Shepherd, Finkelman, Miller & Shah, LLC, for plaintiff-appellant Centerprise International, Ltd.

Michael D. Blechman (argued), Aton Arbisser, Julian Brew and Tanja Shipman, Kaye Scholer LLP for defendants-appellees Infineon Technologies, AG and Infineon Technologies NA Corp.; Joel Sanders, Gibson Dunn & Crutcher LLP, for defendants-appellees Crucial Technology Inc., Micron Technology, Inc., Micron Semiconductor Products, Inc.; William Goodman, Topel & Goodman LLC for defendants-appellees Mosel-Vitelic Inc., and Mosel-Vitelic Corp.; Paul R. Griffin, Thelen Reid & Priest LLP, for defendant-appellee NEC Electronics America, Inc.; Steven H. Morrissett, Finnegan, Henderson, Farabow, Garrett & Dunner LLP, for defendants-appellees Winbond Electronics Corp. and Winbond Electronics Corp. America; Kenneth O'Rourke, O'Melveny & Myers LLP, for defendants-appellees Hynix Semiconductor Inc. and Hynix Semiconductor America, Inc.; Robert E. Freitas, Orrick, Herrington & Sutcliffe LLP, for defendants-appellees Nanya Technology Corp. and Nanya Technology Corp. USA; Harrison J. Frahn, Simpson, Thatcher & Bartlett LLP for defendants-appellees Elpida Memory, Inc. and Elpida Memory (USA), Inc.; James L. McGinnis, Sheppard Mullin Richter & Hampton LLP, for defendants-appellees Samsung Electronics Co. Ltd. and Samsung Semiconductor Inc.

## ORDER

The opinion filed at 538 F.3d 1107, 1110 (9th Cir. Aug. 14, 2008) is amended as follows:

At pg. 1110, insert new footnote 3 after "**B. Subject Matter Jurisdiction**"[3]:

> [3]The district court granted defendants' motion to dismiss, which was premised solely on jurisdictional grounds. It is unclear, however, whether the FTAIA is more appropriately viewed as withdrawing juris-

diction from the federal courts when a plaintiff fails to establish proximate cause or as simply establishing a limited cause of action requiring plaintiffs to prove proximate cause as an element of the claim. *Compare Empagran S.A. v. F. Hoffman-LaRoche, Ltd.*, 417 F.3d 1267, 1268-69, 1271 (D.C. Cir. 2005) (affirming dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction), *with In re Elevator Antitrust Litigation*, 502 F.3d 47, 49-50 (2d Cir. 2007) (affirming dismissal on 12(b)(6) grounds). The Supreme Court's decision in *Empagran I* provides little guidance because, although the district court had dismissed under Rule 12(b)(1), the Court did not explicitly address whether the issue was properly viewed as one of federal question subject matter jurisdiction or of a failure to state a claim under federal law. We decline to resolve the question, because it was not argued by the parties and in this case the result and analysis are the same. Accordingly, we assume without deciding that the district court correctly dismissed under Rule 12(b)(1).

No petitions for panel rehearing or rehearing en banc will be considered.

## OPINION

FISHER, Circuit Judge:

Plaintiff-appellant Centerprise International, Ltd. ("Centerprise"), a British computer manufacturer that purchased dynamic random access memory ("DRAM") outside of the United States, appeals the district court's dismissal of its complaint for lack of subject matter jurisdiction under the Foreign Trade Antitrust Improvement Act of 1982 ("FTAIA"), 15 U.S.C. § 6a, amending the Sherman Act, 15

14348        IN RE DYNAMIC RANDOM ACCESS MEMORY

U.S.C. § 1-7.[1] Defendants-appellees are U.S. and foreign manufacturers and sellers of DRAM, a type of high-density memory used in personal computers and other electronic devices. We affirm.

## I.  Background

Centerprise is a British corporation that uses DRAM in the manufacture of its computers. DRAM is a common type of memory chip that is sold around the world. According to Centerprise, DRAM is "a readily transportable commodity product with multiple firms offering essentially identical parts." Centerprise purchased DRAM outside of the United States from the defendants, various memory companies.

Centerprise brought this antitrust class action in May 2005 on behalf of itself and all others similarly situated, pursuant to §§ 4(a), 12 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22 and 26, seeking injunctive relief and damages, premised on defendants' alleged violations of federal antitrust laws, including § 1 of the Sherman Act.[2] Centerprise alleged that the defendants engaged in a global conspiracy to fix DRAM prices, raising the price of DRAM to customers in both the United States and foreign countries. Specifically, Centerprise asserted that the domestic effect of the defendants' anticompetitive conduct — higher DRAM prices in the United States — gave rise to its foreign injury of having to pay higher DRAM prices abroad because the defendants could not have raised prices worldwide and maintained their global price-fixing arrangement without fixing the DRAM prices in the United States.

---

[1]Hereinafter all statutory provisions cited, unless otherwise indicated, refer to Title 15 of the United States Code.

[2]Centerprise defined the class as "[a]ll individuals and entities located outside of the United States who, during the period from approximately July 1, 1999 through at least June 20, 2002 (the 'Class Period'), purchased DRAM directly from defendants, any subsidiaries or affiliates thereof."

The district court dismissed the complaint with prejudice for lack of subject matter jurisdiction under the FTAIA. Relying on the Supreme Court's decision in *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004) ("*Empagran I*"), and the D.C. Circuit's decision in that case on remand, the district court held that Centerprise had not met the jurisdictional prerequisites under the FTAIA because it had not sufficiently alleged that its foreign injury was directly linked to the domestic effect of higher U.S. prices for DRAM. The district court also denied Centerprise leave to amend its complaint as futile because its proposed amendments did not substantively change its theory of recovery. Centerprise timely appealed.

## II. Discussion

### A. Legal Standards

We review de novo the district court's dismissal for lack of subject matter jurisdiction. *See United States v. LSL Biotechnologies*, 379 F.3d 672, 677 (9th Cir. 2004). The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a motion to dismiss for lack of subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction. *See Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1990).

### B. Subject Matter Jurisdiction[3]

---

[3]The district court granted defendants' motion to dismiss, which was premised solely on jurisdictional grounds. It is unclear, however, whether the FTAIA is more appropriately viewed as withdrawing jurisdiction from the federal courts when a plaintiff fails to establish proximate cause or as

**[1]** In 1982, Congress responded to concerns regarding the scope of the broad jurisdictional language in the Sherman Act by enacting the FTAIA.[4] *See* Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 272i, pp. 286-87 (3d ed. 2006) (hereinafter "Areeda & Hovenkamp"). The FTAIA amends the Sherman Act and "excludes from [its] reach much anticompetitive conduct that causes only foreign injury." *Empagran I*, 542 U.S. at 158. It does this by establishing a general rule that the Sherman Act "shall not apply to conduct involving trade or commerce . . . with foreign nations." § 6a. It then provides an exception to this general rule, making the Sherman Act applicable if foreign conduct "(1) has a 'direct, substantial, and reasonably foreseeable effect' on domestic commerce, and (2) 'such effect gives rise to a [Sherman Act] claim.' " *Empagran I*, 542 U.S. at 159 (quoting § 6a) (alteration in *Empagran I*).[5] This exception is known as the "do-

---

simply establishing a limited cause of action requiring plaintiffs to prove proximate cause as an element of the claim. *Compare Empagran S.A. v. F. Hoffman-LaRoche, Ltd.*, 417 F.3d 1267, 1268-69, 1271 (D.C. Cir. 2005) (affirming dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction), *with In re Elevator Antitrust Litigation*, 502 F.3d 47, 49-50 (2d Cir. 2007) (affirming dismissal on 12(b)(6) grounds). The Supreme Court's decision in *Empagran I* provides little guidance because, although the district court had dismissed under Rule 12(b)(1), the Court did not explicitly address whether the issue was properly viewed as one of federal question subject matter jurisdiction or of a failure to state a claim under federal law. We decline to resolve the question, because it was not argued by the parties and in this case the result and analysis are the same. Accordingly, we assume without deciding that the district court correctly dismissed under Rule 12(b)(1).

[4]Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations . . ." 15 U.S.C. § 1.

[5]The FTAIA states:

> Sections 1 to 7 of [the Sherman Act] shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless —

mestic injury exception" of the FTAIA. The Supreme Court has described the FTAIA's language as:

> initially lay[ing] down a general rule placing *all* (nonimport) activity involving foreign commerce outside the Sherman Act's reach. It then brings such conduct back within the Sherman Act's reach *provided that* the conduct *both* (1) sufficiently affects American commerce, *i.e.*, it has a "direct, substantial, and reasonably foreseeable effect" on American domestic, import or (certain) export commerce, *and* (2) has an effect of a kind that antitrust law considers harmful, *i.e.*, the "effect" must "giv[e] rise to a [Sherman Act] claim."

*Id.* at 162.

**[2]** The FTAIA thus clarifies that U.S. antitrust laws concern the protection of "*American* consumers and *American* exporters, not foreign consumers or producers." Areeda & Hovenkamp at ¶ 272i, pp. 287. For the Sherman Act to apply, the effect on U.S. commerce or American interests engaged in foreign commerce must be direct, substantial and reasonably foreseeable — not minor impacts — and it must "giv[e] rise" to the antitrust claim. *See id.*

---

   (1)   such conduct has a direct, substantial, and reasonably foreseeable effect —

   (A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or

   (B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and

   (2) such effect gives rise to a claim under the provisions of sections 1 to 7 of this title, other than this section. § 6a.

**[3]** In dismissing Centerprise's action, the district court concluded that Centerprise had sufficiently alleged that defendants' conduct had a "direct, substantial, and reasonably foreseeable" effect on U.S. domestic commerce, the first prong of the domestic injury exception, but did not sufficiently allege the second prong, that such U.S. domestic effect "g[ave] rise to" Centerprise's foreign injury under § 6a of the FTAIA. Only the district court's conclusion with respect to the second prong of the domestic injury exception is at issue in this appeal.[6]

**[4]** The controlling precedent on the FTAIA domestic injury exception is the Supreme Court's opinion in *Empagran I*. There the Supreme Court addressed the exception in the context of an antitrust class action brought by foreign purchasers of vitamins who alleged a global price-fixing conspiracy that led to increased prices in the United States, and independently led to increased prices for vitamins in other countries. 542 U.S. 155. The Court stated the issue as whether the Sherman Act reaches "anti-competitive price-fixing activity that is in significant part foreign, that causes some domestic antitrust injury, and that independently causes separate foreign injury." *Id.* at 158.

**[5]** After considering principles of comity and the history of the Sherman Act and the FTAIA, the Court concluded that "Congress would not have intended the FTAIA's exception to bring independently caused foreign injury within the Sherman Act's reach." *See id.* at 173. Thus the foreign purchasers who bought vitamins outside of the United States could not bring a claim under the Sherman Act "where [their] claim rests solely on the independent foreign harm." *Id.* at 159. The Court remanded the case to the D.C. Circuit to consider the plaintiffs' alternative argument that the foreign injury was

---

[6]We focus on whether the exception to the FTAIA's general rule excluding application of the Sherman Act is available because it is undisputed that the alleged price-fixing conduct falls within the FTAIA's general rule because the price-fixing activity constitutes "conduct involving trade or commerce . . . with foreign nations." § 6a.

linked to the domestic effects, and not independent of them. *Id*. at 175. The Court left open the question of the standard to apply in determining whether the plaintiffs alleged a sufficient link between the U.S. effect and their foreign injury so as to establish subject matter jurisdiction under the Sherman Act.[7]

[6] On remand, the D.C. Circuit held that the "gives rise to" language of § 6a of the FTAIA domestic injury exception requires a direct or proximate causal relationship between the domestic effect and the foreign injury, not merely a "but for" relationship. *See Empagran S.A. v. F. Hoffmann-Laroche, Ltd.*, 417 F.3d 1267, 1271 (D.C. Cir. 2005) ("*Empagran II*"). The plaintiffs' asserted theory on remand was that the domestic effect of the anticompetitive conduct — higher U.S. vitamin prices — gave rise to their foreign injury of higher vitamin prices abroad because the defendants could not have maintained their global price-fixing arrangement without fixing the prices in the United States as well. The court concluded that under this theory the domestic effect of the conspiracy was only a "but for" cause of the plaintiffs' injuries, so the requirements of the FTAIA exception were not met and the Sherman Act was therefore inapplicable. The

---

[7]The Areeda & Hovenkamp treatise comments on this open question as follows:

> Clearly [the Supreme Court] could not have meant that the mere fact that this was a conspiracy involving both sellers and buyers all over the world was sufficient. To be sure, in such a conspiracy the injury to any particular buyer is linked to the injury suffered by other buyers or else the conspiracy would not work. . . .
>
> But the forbearance of one cartel member from cutting price or shipping into another cartel member's territory is necessary to the functioning of *every* cartel. To interpret "linkage" of foreign and domestic injury this broadly would have undermined the entirety of the Court's opinion, which unambiguously held that foreign plaintiffs injured by a conspiracy that also injured American purchasers could not sue under the Sherman Act.

Areeda & Hovenkamp ¶ 272i5, pp. 317-18.

14354         IN RE DYNAMIC RANDOM ACCESS MEMORY

Eighth Circuit recently joined the D.C. Circuit in interpreting the FTAIA's domestic injury exception to require proximate cause. *See In re Monosodium Glutamate Antitrust Litig.*, 477 F.3d 535, 539 (8th Cir. 2007).

We have not had occasion since *Empagran I* to illuminate the standard that applies in determining whether a domestic effect "gives rise to" a foreign injury, where the plaintiff alleges its foreign injury was linked to the domestic effect of the defendants' anticompetitive conduct. Like the plaintiffs in *Empagran II*, Centerprise contends the FTAIA's domestic injury exception requires only "but for" causation and that its claim meets this standard. Alternatively, Centerprise contends that its claim satisfies even a proximate cause standard.

**[7]** Like the D.C. Circuit and the Eighth Circuit, we conclude that "but for" causation cannot suffice for the FTAIA domestic injury exception to apply and therefore adopt a proximate causation standard. As our sister circuits have explained, a proximate cause standard is consistent with principles of comity — "the respect sovereign nations afford each other by limiting the reach of their laws." *Empagran II*, 417 F.3d at 1271 (internal quotations omitted). The Supreme Court counseled in *Empagran I* that the principles of comity require us to "ordinarily construe[ ] ambiguous statutes to avoid unreasonable interference with the sovereign authority of other nations." 542 U.S. at 164; *see In re Monosodium Glutamate*, 477 F.3d at 538; *Empagran II*, 417 F.3d at 1271. To interpret the FTAIA broadly as requiring only "but for" causation would risk the very sort of interference that we ordinarily seek to avoid. *See Empagran I*, 542 U.S. at 165 ("Why should American law supplant, for example, Canada's or Great Britain's or Japan's own determination about how best to protect Canadian or British or Japanese customers from anticompetitive conduct engaged in significant part by Canadian or British or Japanese or other foreign companies?").[8]

---

[8]The case before us illustrates this point well. At oral argument, Centerprise acknowledged "[it] could" bring suit in the United Kingdom against

**[8]** Further, the Supreme Court said that "the FTAIA's language and history suggest that Congress designed the FTAIA to clarify, perhaps to limit, but not *to expand* in any significant way, the Sherman Act's scope as applied to foreign commerce." *Empagran I*, 542 U.S. at 169 (emphasis in original). If we were to adopt a "but for" standard, we would indeed be expanding the Sherman Act's scope as applied to foreign commerce, notwithstanding Centerprise's contention to the contrary.

None of the cases predating the FTAIA interpret the reach of the Sherman Act as expansively as Centerprise urges we should do here. The pre-FTAIA cases that Centerprise relies upon, *Pfizer, Inc. v. Government of India*, 434 U.S. 308 (1978), and *Industria Siciliana Asfalti, Bitumi, S.p.A. v. Exxon Research & Engineering Co.*, No. 75 Civ. 5828-CSH, 1977 WL 1353 (S.D.N.Y. Jan. 18, 1977), certainly do not reflect a "but for" standard. In *Pfizer*, although saying that Congress did not intend to make remedies under U.S. antitrust laws available only to U.S. consumers, the Supreme Court was speaking only to the issue of whether a foreign nation could be a "person" under antitrust laws. *See Pfizer*, 434 U.S. at 312, 314. It did not address the requisite causal relationship between the domestic effect and the foreign injury. If anything, the Court wrote in terms suggesting that the foreign sovereigns were directly injured by the defendants' antitrust violations. *See, e.g.*, *id.* at 314-15 ("To deny a foreign plaintiff *injured* by an antitrust violation the right to sue would . . . permit a price fixer or monopolist to escape full liability for his illegal actions and would deny compensation to certain of his victims, merely because he happens to deal with foreign *cus-*

---

the defendants for their anticompetitive conduct. We recognize that some of the defendants here are American corporations, but many are not, and Centerprise does not dispute that all of its purchases were made outside U.S. commerce, making real the risk of interference with a foreign nation's ability to regulate its commercial affairs.

*tomers*." (emphasis added)). In *Industria Siciliana*, the domestic effect at issue was plainly the direct cause of the plaintiff's injury. There, a U.S. company was party to a reciprocal agreement that coerced the foreign consumer to forgo a more advantageous bid for design and engineering services from another U.S. company, a violation whose domestic effect directly and proximately caused the foreign plaintiff having to pay higher, super-competitive prices for the U.S. services. *See Industria Siciliana*, 1977 WL 1353, at *2, 11.

**[9]** Finally, the proximate cause standard is consistent with general antitrust principles, which typically require a direct causal link between the anticompetitive practice and plaintiff's damages. *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 267-68 (1992); *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 533-35 (1983); *see also In re Monosodium Glutamate*, 477 F.3d at 538-39. Accordingly, we hold that the "gives rise to" language of the domestic injury exception requires a direct or proximate causal relationship.

**[10]** Applying the proximate cause standard to Centerprise's stated claim, we conclude that the domestic effect of the defendants' alleged price-fixing conspiracy did not give rise to Centerprise's alleged foreign injury so as to satisfy the second prong of the FTAIA domestic injury exception. The defendants' conspiracy may have fixed prices in the United States and abroad, and maintaining higher U.S. prices might have been necessary to sustain the higher prices globally, but Centerprise has not shown that the higher U.S. prices proximately caused its foreign injury of having to pay higher prices abroad. Other actors or forces may have affected the foreign prices. In particular, that the conspiracy had effects in the United States and abroad does not show that the effect in the United States, rather than the overall price-fixing conspiracy itself, proximately caused the effect abroad. *See In re Monosodium Glutamate*, 477 F.3d at 539-40 ("The domestic effects of the price fixing scheme (increased U.S. prices) were not the

IN RE DYNAMIC RANDOM ACCESS MEMORY    14357

direct cause of the appellants' injuries. Rather, it was the *foreign effects* of the price fixing scheme (increased prices abroad)." (emphasis added)).

**[11]** Notably, Centerprise is a foreign consumer that made its purchases entirely outside of the United States. It has recourse under its own country's antitrust laws. *See supra* note 7. Centerprise's indirectly linked foreign injury is not of the type that Congress intended to bring within the Sherman Act's reach when it enacted the FTAIA, as evidenced by the domestic injury exception's narrow phrasing. Centerprise's causation theory directly parallels the "but for" or indirect causation theories rejected in *Empagran II* and *In re Monosodium Glutamate*.[9] *See Empagran II*, 417 F.3d at 1270 (rejecting as insufficient the plaintiffs' theory that "[b]ecause the . . . product (vitamins) was fungible and globally marketed, [the defendants] were able to sustain super-competitive prices abroad only by maintaining super-competitive prices in

---

[9]Centerprise's argument that its case is similar to *Caribbean Broadcasting Systems, Ltd. v. Cable and Wireless PLC*, 148 F.3d 1080 (D.C. Cir. 1998), and *MM Global Services v. Dow Chemical Co.*, 329 F. Supp. 2d 337 (D. Conn. 2004), also fails. First, it is questionable whether *Caribbean Broadcasting* has any relevance, because it pre-dates *Empagran I* and does not interpret the provision of the FTAIA at issue here. *See Caribbean Broad.*, 148 F.3d at 1087. Second, the case is factually distinguishable. There, the plaintiff alleged the defendants violated the Sherman Act in maintaining a broadcast monopoly in the eastern Caribbean by misrepresenting to its advertising customers the breadth of the station's broadcasting reach, an effect of which was that U.S. advertisers paid excessive prices for advertising. This effect in the United States directly caused the plaintiff to lose revenue because it could not sell advertising to the same U.S. businesses. Centerprise alleges no such foreclosure of the market by rivals. *MM Global Services* is also inapposite because the plaintiffs there pled direct participation in domestic commerce, unlike Centerprise whose complaint concerns only wholly foreign transactions. The plaintiffs argued that the defendants fixed minimum resale prices and other terms for selling and reselling products in and from the United States, and compelled plaintiffs to agree to engage in a price maintenance conspiracy, thereby injuring the plaintiffs by precluding them from fully competing in the sales of their products. *See MM Global Services*, 329 F. Supp. 2d at 342.

the United States as well."); *In re Monosodium Glutamate*, 477 F.3d at 539-40. Likewise, Centerprise's statement that "[t]he United States prices were the source of, and substantially affected the worldwide DRAM prices" alleges no more than the "but for" causation that we hold does not suffice. In sum, Centerprise's complaint suggests that super-competitive DRAM prices in the United States may have facilitated the defendants' scheme to charge super-competitive prices abroad, but it does not sufficiently allege a theory that the higher U.S. prices proximately caused Centerprise's foreign injury of having to pay higher prices outside the United States.

**[12]** Centerprise argues, however, that beyond alleging a theory similar to that rejected by our sister circuits, it is alleging "a direct correlation between the U.S. price and the prices abroad" and "that the Defendants' activities resulted in the U.S. prices directly setting the worldwide price." At oral argument, Centerprise was unable to explain how these additional allegations change its causation theory or how they make its claim distinguishable from those in *Empagran II* or *In re Monosodium Glutamate*. First, a direct correlation between prices does not establish a sufficient causal relationship. Similar arguments were made and rejected in *Empagran II* and *In re Monosodium Glutamate* — that there was a single global price kept in equipoise by the maintenance of super-competitive prices in the U.S. market. *See Empagran II*, 417 F.3d at 1271, n.5; *In re Monosodium Glutamate*, 477 F.3d at 539-40. As to Centerprise's assertion that the defendants' activities resulted in the U.S. prices setting the worldwide price, Centerprise has taken liberties in characterizing the language of its complaint and, moreover, has not set forth a theory with any specificity of how this price-setting occurred or how it shows a direct causal relationship.[10] *See Kendall v.*

---

[10]Most notably, paragraph 75 of its complaint alleges:

> Memory purchases are a 24 hour global business, dependent in large part on United States events. For example, Plaintiff and

*Visa U.S.A., Inc.*, 518 F.3d 1042, 1046-47 (9th Cir. 2008) (faulting antitrust complaint for failing to plead necessary evidentiary facts). We therefore hold that Centerprise has not sufficiently alleged that the domestic effect gave rise to its foreign injury so as to bring its claim within the FTAIA exception.

The district court properly concluded that Centerprise's failure to provide any comprehensible theory alleging a direct causal link between the domestic effects and the foreign injury warranted dismissal.

### III.  Leave to Amend

We review a district court's denial of leave to amend a complaint for abuse of discretion. *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 818 (9th Cir. 1988). A court properly exercises its discretion in denying leave to amend if the proposed amendment would be futile. *See Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986).

At oral argument before the district court, Centerprise proposed amending its complaint to include an allegation about the correlation between "U.S. prices during the conspiracy

---

many Class members start their days with communications to Defendants in Taiwan and Korea to understand what pricing is available for DRAM, and as the day goes on follow sales in the United States. Plaintiff and Class members were required to track the DRAM prices in dollars, which was the only available measure due to Defendants' sales and distribution practices, then work on dollar exchange rates in order to buy the DRAM at the best available price worldwide. The United States prices were the source of, and substantially affected the worldwide DRAM prices.

The significance of these assertions, however, is not self-evident and Centerprise has not elaborated on how any of its asserted facts show that the higher U.S. DRAM prices proximately caused the excessive DRAM prices that Centerprise paid.

and those in Europe and Asia-Pacific." Centerprise argued that this would show that the defendants' "pricing of DRAM in the U.S. market, . . . with the knowledge that based on the way the market worked and the sales and distribution practices, . . . was going to result in a direct correlation." Centerprise argued this correlation was reflected in charts it submitted to the district court. The district court noted that an additional allegation about the correlation or interdependence of markets would not suffice to show that the effect in the United States actually "g[ave] rise to" the plaintiff's claim; Centerprise could not escape a finding of no subject matter jurisdiction unless it came up with a different theory of recovery altogether.

[13] We agree that the additional allegation Centerprise proposed was similar to those it already made and alleged too indirect a link to support subject matter jurisdiction under the FTAIA. Centerprise's assertion that the domestic and foreign prices were directly correlated, without more, did not warrant granting leave to amend. Therefore, we hold the district court did not abuse its discretion in denying leave to amend as futile.[11]

The judgment of the district court is affirmed.

**AFFIRMED**.[12]

---

NOONAN, Circuit Judge, concurring:

There is such a thing as "cause in fact," that is, an event that, not necessarily alone, brings about a given result. A "but

---

[11]In light of our decision on FTAIA subject matter jurisdiction and the district court's refusal of leave to amend the complaint, we do not reach defendants' contention that Centerprise lacks antitrust standing.

[12]Appellees' Request for Judicial Notice filed September 20, 2006 is denied as unnecessary.

for" cause is cause in fact. A "legal cause" is a cause in fact that is recognized in law as creating liability. A "proximate cause" is a legal cause. What turns cause in fact into a legal cause is a value judgment that the cause in fact creates an unacceptable risk of injury to a protected interest. What is an unacceptable risk and what is to be protected depend on the values of the society.

As Cardozo's famous opinion in *Palsgraf* makes clear, that is how causation is often considered in the law of negligence. Antitrust law, apparently, still offers "proximate" as if it provided something more than a label for a judgment that the conduct in question is foreseeably harmful to a social interest worthy of protection.

In the instant case, it would seem that reasonably prudent persons in the position of the defendants would see that their actions setting prices in the United States would negatively affect customers in the United States and elsewhere. But it has been the judgment of Congress and the Supreme Court that the economic interests of consumers outside the United States are normally not something that American law is intended to protect. Hence it is difficult to persuade a court that injury to foreign consumers has been "caused" by price-fixing in the United States. It's so difficult that amendment of the complaint becomes futile and jurisdiction itself is found not to exist. We reach this vanishing point not from guidance in words like "proximate" or "direct" but from a strong sense that the protection of consumers in another country is normally the business of that country. Location, not logic, keeps Centerprise's claim out of court.